# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>A BLACK APPLE IPHONE 7 MODEL NUMBER A1778 WITH FCC ID NUMBER BCG-E3091, WHICH IS CURRENTLY LOCATED AT 4 HARROWGATE COMMONS, MASSENA, NEW YORK 13662 | )<br>)<br>) Case No. 8:24-MJ-29 (GLF)<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii) & (a)(2) | Alien transporting and smuggling |
| 8 U.S.C. § 1325(a) | Evading inspection |
| 8 U.S.C. § 1326(a) | Illegal reentry |

The application is based on these facts:
Please see attached affidavit.

☐ Continued on the attached sheet.
☒ Delayed notice of **30** days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**PETER M PEASE** Digitally signed by PETER M PEASE
Date: 2024.01.25 10:30:53 -05'00'

*Applicant's signature*

HSI Special Agent Peter Pease
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone *(specify reliable electronic means)*.

Date: January 26, 2024

*Judge's signature*

City and state:  Plattsburgh, NY

Hon. Gary L. Favro, U.S.M.J.
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH A BLACK APPLE IPHONE 7 MODEL NUMBER A1778 WITH FCC ID NUMBER BCG-E3091, WHICH IS CURRENTLY LOCATED AT 4 HARROWGATE COMMONS, MASSENA, NEW YORK 13662 | Case No. 8:24-MJ-29(GLF) |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Peter Pease, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a black Apple iPhone 7, model number A1778, with FCC ID number BCG-E3091 (the "Device"), which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been a Special Agent since February 2023. I am a graduate of the Criminal Investigator Training Program and the HSI Special Agent Training located at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. Prior to my appointment in the HSI Massena Office, I served in the United States Navy as a Hospital Corpsman from 2012 to 2017. I served in the United States Secret Service as a Special Agent from 2021 to 2022. I have a bachelor's degree in criminal justice and a master's degree in criminal justice legal studies.

3.  I am currently assigned to the HSI Border Enforcement Security Taskforce (BEST) in Massena, New York. BEST is tasked with the enhancement of border security by fostering coordinated efforts among Federal, State, and local border and law enforcement officials to protect United States' border cities and communities from trans-national crime, including but not limited to drug trafficking, arms smuggling, bulk cash smuggling, illegal alien trafficking and smuggling, violence, and kidnapping along and across the international borders of the United States.

4.  I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority. I am a "Federal law enforcement officer", within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am charged with conducting criminal investigations of alleged violations of federal criminal statutes, including but not limited to Title 8, Title 18, Title 21, and Title 31 of the United States Code.

5.  As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. My duties include the enforcement of federal criminal law, under Title 18 of the United States Code. I have conducted or participated in surveillance, the execution of search warrants, debriefings of informants, reviews of recorded conversations, and monitoring of court ordered wire intercepts. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

6.  I have investigated violations of the Immigration Nationality Act (INA), including illegal entry of aliens in violation of Title 8, United States Code, Section 1325, and the smuggling of aliens in violation of Title 8, United States Code, Section 1324. I have reviewed the evidence and analyzed data and information from electronic device search warrants and presented that data as evidence during criminal investigations.

7. From my training and experience as a Special Agent and that of agents and officers with whom I regularly work, I know that alien smuggling organizations frequently utilize various forms of communication on electronic devices that may facilitate the illegal smuggling of aliens to, from, and within the United States. I also have become familiar with the manner in which illegal aliens are smuggled, the method of payment for such smuggling, and the efforts of persons involved in such activities to avoid detection by law enforcement. Other law enforcement officers and agents of HSI BEST Massena also have extensive experience in alien smuggling investigations and I continue to have conversations with them concerning this and other alien smuggling related investigations.

8. I am submitting this affidavit in support of my application for a search warrant authorizing the search of the Device. I submit that probable cause exists to believe that the Device contains electronically stored data, which will show evidence of alien smuggling, including methods and locations of smuggling routes, methods of payment for smuggling activities, and other instrumentalities of alien smuggling in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) & (a)(2), 1325(a), & 1326(a). While, as discussed below, it appears that the Device has been abandoned, out of an abundance of caution, I am seeking a search and seizure warrant concerning the Device.

9. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the foundation for an order authorizing a search warrant for the Device. The facts in this Affidavit come from my personal knowledge, my training and experience, my participation in the investigation, and information obtained from other agents, investigators, and witnesses, and participation in the investigation and information provided by agents of the U.S. Border Patrol (USBP). As a result of my participation in this investigation, I am fully familiar with the facts and circumstances of this investigation.

3

10. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

11. The property to be searched is the Device, which is currently located at 4 Harrowgate Commons, Massena, New York 13662.

12. The applied-for warrant would authorize forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

13. On January 12, 2024, at approximately 2:39AM, U.S. Customs and Border Protection (CBP) at the Massena, New York Port of Entry (POE) encountered a black 2002 Cadillac Escalade bearing New York State license plate number LHC7664. The driver of the vehicle was identified as Cynthia THOMAS. The CBP Officer noted that THOMAS appeared to be nervous because her hands were shaking, and she failed to maintain eye contact when asked basic primary questions. The CBP Officer instructed THOMAS to lower the rear passenger window and noticed that THOMAS' nervous behavior increased. The CBP Officer then instructed THOMAS to place the car in park and that they would be conducting a trunk check. Once in the trunk area, the CBP Officer observed a blanket spread across the trunk area with several bulges throughout. When the CBP Officer touched the blanket, it began to move. The CBP Officer removed the blanket and observed one female and three males laying down. The vehicle and five occupants were all escorted to secondary inspection for further investigation.

14. CBP contacted Homeland Security Investigations (HSI) Massena and requested investigative assistance. In secondary, CBP identified all four individuals: Augusto Juvenal CASTRO SANTA MARIA, a citizen of Colombia; John BERNAL, also known as John Jairo RAMIREZ PEREZ, a citizen of Colombia; an adult female Colombian citizen who also has legal

4

permanent resident status in the United Stats but did not have her permanent resident identification card on her person; and a minor male Colombian citizen.

15. HSI Massena Special Agents responded to the POE to provide investigative assistance. In an audio recorded interview with HSI Special Agents, THOMAS explained approximately thirty minutes prior to arriving at the POE, she drove to a parking lot in Cornwall, Ontario, Canada. Once in the parking lot, she met with the four individuals and had them get into the trunk area of her car. After they got into her car, THOMAS stated that she drove directly to the Massena POE, where she was supposed to enter in the United States and drive the individuals to another location that would later be told to her. THOMAS stated that the individuals were illegal aliens and that she knew this because they did not speak English and had to cross the border illegally. Once the individuals were dropped off at a United States location, THOMAS was supposed to drive back to the location in Cornwall to meet with the unnamed individual who coordinated the event and was to be paid between $700 USD and $1000 USD per person.

16. A query of Department of Homeland Security databases indicated that CASTRO SANTA MARIA has no lawful immigration status in the United States. He also claimed to be a citizen of Colombia.

A query of Department of Homeland Security databases indicated that BERNAL has no valid immigration status in the United States. He also claimed to be a citizen of Colombia. BERNAL is a match to Alien number *******96 and was previously deported from the United States on December 11, 2007.

17. A query of Department of Homeland Security databases indicated that the above-referenced minor had no lawful immigration status in the United States. He also claimed to be a citizen of Colombia.

18. At approximately 9:00 on the same date, the St. Regis Mohawk Tribal Police

Department (SRMTPD) contacted USBP to inform them that SRMTPD located abandoned luggage on White Road, which is located on the Akwesasne Mohawk Indian Reservation (AMIR). SRMTPD indicated that they believed the luggage could belong to someone involved in an alien smuggling event. A USBP agent met with SRMTPD and recovered the abandoned luggage and transported the luggage and its contents to the Massena POE. The abandoned property included one purse, two duffel bags, and three backpacks.

19. At the Massena POE, the abandoned luggage was searched, and the Device was located inside of one of the duffel bags. All of the luggage was presented to BERNAL, CASTRO SANTA MARIA, the above-referenced minor, and the above-referenced female Colombian citizen, and all of the luggage was claimed by the individuals. The minor claimed ownership of the duffel bag that contained the Device, but denied ownership of the Device itself. BERNAL, CASTRO SANTA MARIA, the above-referenced female citizen of Colombia, and THOMAS all denied ownership of the Device as well.

20. Through my training and experience, I am aware that smuggled aliens and smugglers commonly store names, phone numbers, and contact information for members of smuggling organizations on cellular phones, including, but not limited to information pertaining to the heads of the alien smuggling organization; the individuals involved in the alien smuggling organization; the individuals who transport the aliens; and the individuals who are responsible for the proceeds of alien smuggling. I am also aware that smuggled aliens commonly communicate on their cellular devices in furtherance of their own travels, including, but not limited to thorough real-time conversations regarding alien smuggling. I am aware that individuals involved in crossing the border illegally often use a cellular telephone's GPS functions to search for and map out potential crossing locations and individuals who pick illegal aliens up often utilize the GPS map function to find the aliens. I am aware that smugglers will use phones like the Device to

coordinate amongst themselves the movement of aliens and payment for smugglers.

21. On January 16, 2024, this Court issued a criminal complaints charging CASTRO SANTA MARIA, BERNAL, THOMAS with violations of Title 8 of the United States Code.

22. The Device is currently in storage at 4 Harrowgate Commons, Massena, New York 13662. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, are substantially in the same state as it was when the Device first came into the possession of HSI.

## TECHNICAL TERMS

23. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

   b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

   c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed

and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly

8

available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

24. Based on my training, experience, and research, I know that iPhone cellular phones, other cellular phones, and GPS devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

9

Internet are typically stored for some period of time on the Device. This information can sometimes be recovered with forensic tools.

26. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.

There is probable cause to believe that this forensic evidence might be the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

10

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. The examination will be performed by representatives from the Department of Homeland Security and their designees.

28. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of the warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize the execution of the warrant at any time in the day or night.

## CONCLUSION

29. Based upon this information, your affiant respectfully submits that this affidavit supports probable cause to believe that evidence of violations of Title 8, United States Code, Section 1324(a)(1)(A), bringing in aliens; Title 8, United States Code, Section 1325(a)(2), entry without inspection; and Title 8, United States Code, Section 1326(a)(2), reentry after removal, will be located in the Device. This affiant respectfully requests a search warrant authorizing the examination of the Device as described in Attachment A to seek the items described in Attachment B.

Attested to by the affiant:

**PETER M PEASE** Digitally signed by PETER M PEASE
Date: 2024.01.25 10:31:54 -05'00'

Peter Pease
Special Agent
Homeland Security Investigations

I, the Honorable Gary L. Favro, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on January 26, 2024 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Gary L. Favro
United States Magistrate Judge
Northern District of New York

12

## ATTACHMENT A
### Places to be Searched

The property to be searched is a black Apple iPhone 7, model number A1778, FCC ID number BCG-E3091 currently in storage at 4 Harrowgate Commons, Massena, New York 13662 by Homeland Security Investigations (the "Device").

## ATTACHMENT B
## Particular Things to be Seized

1. All records on the Device described in Attachment A evidencing or constituting instrumentalities of violations of 8 U.S.C. §§ 1324(a)(1)(A)(ii) & (a)(2), 1325(a), & 1326(a) and involve Augusto CASTRO SANTA MARIA, John BERNAL, and/or Cynthia THOMAS, including:

   a. Listings of incoming and outgoing calls with corresponding date/time of calls;

   b. Stored telephone and address directories;

   c. Direct connect and identification numbers;

   d. Pictures and videos;

   e. All audio recordings;

   f. All voice mail recordings;

   g. All location and GPS data;

   h. All instant messaging and related stored communications;

   i. All SMS messages and related stored communications; and

   j. Any other notations or electronic storage of any kind.

   k. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   l. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2